IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM K. MOORE and                                    Case No.:
NANCY S. MOORE,
                Plaintiffs,

v.

ASSET ACCEPTANCE, LLC,                          **JURY TRIAL DEMANDED**
                Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I.        Introduction

1.      This is an action for damages brought by individual consumers for Defendant's violations

        of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. (hereinafter

        "FDCPA") and the Florida Consumer Collection Practices Act, F.S.A. §§ 559.55-559.785

        (hereinafter "FCCPA"); these laws prevent debt collectors and persons, respectively,

        from, *inter alia*, engaging in abusive, deceptive, harassing, and unfair collection

        practices.

### II.       Jurisdiction and Venue

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337,

        and 1367.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1391(d), as a substantial part of the

        events or omissions giving rise to the claims occurred in this judicial district.

### III.      Parties

4.      Plaintiffs, WILLIAM K. MOORE and NANCY S. MOORE (hereinafter collectively

        referred to as "Plaintiffs"), are natural persons who reside in the County of Hillsborough,

Page 1 of 8

State of Florida, and are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) and F.S.A. § 559.55(2), or are persons with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5.      Defendant, ASSET ACCEPTANCE, LLC (hereinafter "Defendant" or "Asset"), is a for-profit entity organized under the laws of Delaware, with its principal place of business located at 28405 VAN DYKE AVE, WARREN MI 48093; Defendant Asset is a "debt collector," as that term is defined under 15 U.S.C. § 1692a(6) and F.S.A. § 559.55(6), as it regularly collects, or attempts to collect, debts alleged to be due to another, and is also an "out-of-state consumer debt collector," as that term is defined by F.S.A. § 559.55(8), as its business activities in Florida involve both collecting or attempting to collect consumer debt from debtors located in Florida by means of interstate communication originating from outside of this state.

### IV.      Factual Allegations

6.      In or around July or August 2010 Mrs. Moore received a call on her cellular phone from a male representative of Defendant, ASSET ACCEPTANCE, LLC.

7.      The representative identified himself and asked to speak with her husband, Mr. Moore.

8.      Mrs. Moore explained that her husband was not with her and that she was currently driving an automobile along with her grandchildren inside the vehicle.

9.      Mrs. Moore asked the representative if he could call back at a later time as she was driving, or if he would give her a number which he could be reached on, so that Mr. Moore could return his call at a later time.

10. The caller refused to call back, give a callback number, or end the call, and he then began to discuss with Mrs. Moore a debt alleged to be originally owed by Mr. Moore to Assignor, Citibank.

11. It is alleged that the debt originally owed to Citibank was incurred for personal, family, or household purposes, and is therefore a "debt" or "consumer debt" as those terms are defined by 15 U.S.C. § 1692a(5) and F.S.A. § 559.55(1).

12. Mrs. Moore is not an obligor of the account and thus Defendant had no reason to discuss this debt with Mrs. Moore.

13. Mrs. Moore again reminded the caller that she was driving and that it was not a good time for her to be on the phone.

14. The caller was stating that Mrs. Moore had to "take care of the account now," and gave her two options to settle the account: a lump payment to settle or three payments over time.

15. The caller demanded that Mrs. Moore immediately provide him with a bank account number in order to pay Defendant.

16. Mrs. Moore advised the caller that neither she nor her husband had any funds available with which to pay them, or else the debt would have already been paid.

17. Mrs. Moore attempted to explain their inability to pay the debt by disclosing the existence of recent period in which her husband was unemployed.

18. Mrs. Moore then explained that her husband had just recently found new employment, but as he is new in the position, they were still trying to stabilize themselves financially.

19. The caller began stating that Mr. Moore's new employer would be contacted for the purpose of garnishing his wages.

20.     Upon information and belief, it is alleged that the caller made no mention of the need for a judgment prior to contacting the employer.

21.     After hearing the caller's threat, Mrs. Moore became fearful that if she ended the call at that point, Mr. Moore's employer would be contacted by Defendant, thus jeopardizing his employment.

22.     Despite the fact that she felt it was dangerous to continue speaking on the phone while driving, and despite her several attempts to end the call, as a result of the tremendous fear that Defendant would call Mr. Moore's employer, Mrs. Moore remained on the line with the caller.

23.     The caller became irritable with Mrs. Moore, yelling, "You have to take care of this [debt]; you have to take care of this [debt] now."

24.     The caller was speaking so loudly that Plaintiff's granddaughter was able to hear his voice emanating from the earpiece, from where she was seated in the vehicle.

25.     The caller suggested to Mrs. Moore that perhaps she could borrow the money from a relative to pay the debt.

26.     Mrs. Moore explained that they had nobody to borrow money from.

27.     In an attempt to guilt Mrs. Moore into agreeing to pay, the caller stated to Plaintiff, "This is your problem; you need to take care of it."

28.     Plaintiff again asked the caller if she or her husband could call him back as she could not continue speaking with him while driving, but the caller would not acknowledge her request.

29.   Finally, despite her immense fear that Defendant would contact Mr. Moore's new employer, she ended the call by hanging up without the caller agreeing to mutually terminate the conversation.

30.   Upon information and belief, it is alleged that the caller refused to provide adequate identification when requested to do so, in violation of the FDCPA and FCCPA.

31.   Defendant's representative used willfully abusive language when communicating with Mrs. Moore, in violation of the FCCPA.

32.   The caller willfully engaged in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family, in violation of the FCCPA.

33.   It is alleged that Defendant's harassing call, generally, was violative of the FDCPA.

34.   It is alleged that all acts or omissions of the employees/agents of Defendant were performed within the scope of their respective employment/agency with Defendant, thus subjecting Defendant to vicarious liability for these acts under the doctrine of respondeat superior.

35.   Defendant threatened Mrs. Moore that he would contact Mr. Moore's employer prior to obtaining a judgment, and without explaining of Defendant's need to obtain a judgment, in violation of the FDCPA and FCCPA.

36.   Defendant's contact of Mrs. Moore regarding Mr. Moore's debt, for a purpose other than to obtain correct location information was violative of the FDCPA.

37.   As a result of the acts or omissions of Defendant and its employees/agents, Mrs. Moore suffered from mental anguish from fear of her husband losing his recently-acquired employment and the subsequent loss of income, great stress caused by being forced to

stay on the phone while driving due to the caller's refusal to give a callback number,

despite his knowledge that she was concerned about talking while driving.

## FIRST CLAIM
**Violation of the Federal Fair Debt Collection Practices Act (FDCPA)**
**William K. Moore v. Asset Acceptance, LLC**

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 15, 19, 20, 35,

and 36.

38.     Defendant's actions were performed with the intent to coerce Plaintiff into paying a

defaulted consumer debt.

39.     The foregoing acts and omissions of Defendant and its employees/agents constitute

numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C.

§§ 1692b(1), 1692b(2), 1692c(b), 1692e(10).

40.     As a result of the above violations of the FDCPA, Plaintiff is entitled to a declaratory

judgment that Defendant's conduct violated the FDCPA, and recovery for actual

damages, statutory damages, and costs together with a reasonable attorney's fees.

## SECOND CLAIM
**Violation of the Florida Consumer Collection Practices Act (FCCPA)**
**William K. Moore v. Asset Acceptance, LLC**

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 15, 19, 20, 35,

and 36.

41.     Defendant's actions were performed with the intent to coerce Plaintiff into paying a

defaulted consumer debt.

42.     The foregoing acts and omissions of Defendant and its employees/agents constitute

violations of the FCCPA, including, but not limited to, F.S.A. §§ 559.72(4), 559.72(7),

and 559.72(15).

43.     As a result of Defendant's violation of the FCCPA, Plaintiff is entitled to a declaratory

judgment that Defendant's conduct violated the FCCPA, and recovery for actual

damages, statutory damages, punitive damages, and costs together with a reasonable

attorney's fees.

## THIRD CLAIM
### Violation of the Federal Fair Debt Collection Practices Act (FDCPA)
### Nancy S. Moore v. Asset Acceptance, LLC

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 35, and 37.

44.     Defendant's actions were performed with the intent to coerce Plaintiff into paying a

defaulted consumer debt.

45.     The foregoing acts and omissions of Defendant and its employees/agents constitute

numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C.

§§ 1692b(1), 1692b(2), 1692c(b), 1692d generally, 1692d(2), 1692d(6), 1692e generally,

1692e(4), 1692e(5), 1692e(7), 1692e(10), 1692f generally, and 1692f(6)(B).

46.     As a result of the above violations of the FDCPA, Plaintiff is entitled to a declaratory

judgment that Defendant's conduct violated the FDCPA, and recovery for actual

damages, statutory damages, and costs together with a reasonable attorney's fees.

### V.      Request for Relief

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment

against Defendant for the following:

a.     Declaratory judgment that Defendant's acts constituted violations of the FDCPA

and FCCPA;

b.     Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and F.S.A. § 559.77(2);

c.     Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and F.S.A. § 559.77(2);

d.    Punitive damages, pursuant to F.S.A. § 559.77(2);

e.    Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and

F.S.A. § 559.77(2); and

f.    Such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Joseph B. Battaglia
G. Donald Golden, Fla. Bar No.: 0137080
don@brandonlawyer.com
Joseph B. Battaglia, Fla. Bar No.: 0058199
joe@brandonlawyer.com
THE GOLDEN LAW GROUP
808 Oakfield Drive, Suite A
Brandon, Florida 33511
Telephone:  (813) 413-8700
Facsimile:   (813) 413-8701
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

/s/ Joseph B. Battaglia
G. Donald Golden, Fla. Bar No.: 0137080
Joseph B. Battaglia, Fla. Bar No.: 0058199